

**FILED & ENTERED**

**JUN 19 2019**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY hawkinso DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>WASANTHA K. LEONIDAS | Case No.: 6:17-bk-19739-MH<br><br>Chapter: 13<br><br>**MEMORANDUM DECISION AND ORDER OVERRULING CLAIM OBJECTION** |

### I.    BACKGROUND

On November 22, 2017, Wasantha Leonidas ("Debtor") filed a Chapter 13 voluntary petition, commencing the instant case. On March 7, 2012, Debtor obtained a discharge in a prior Chapter 7 proceeding (the "Prior Case"). On January 5, 2018, Debtor filed a motion to avoid Real Time Resolutions' lien, which was recorded in 2007 – prior to Debtor's receipt of a discharge in the Prior Case. On May 1, 2018, the Court entered an order granting the motion. The hanging paragraph, included within section 4 of the attachment to the motion, provides that: "[u]nless otherwise ordered, any allowed claim in excess of this Secured Claim Amount is to be treated as a nonpriority unsecured claim and is to be paid pro rata with all other nonpriority unsecured claims in Class 5A of the Plan." [Dkt. 34]. Additionally, sections 5 and 6 of the attachment to the motion state that: (1) the effective date of lien avoidance is upon (presumably, the earlier of) completion of the Chapter 13 plan or receipt of a discharge; and (2) the underlying lien is retained until the effective date of avoidance. That order was not appealed and became final.

On February 8, 2018, Debtor's Chapter 13 case was confirmed. On March 29, 2018, Real Time Resolutions, Inc. ("Creditor") filed a secured claim in the amount of $69,815.31 ("Claim 6"). On April 5, 2018, Debtor filed an objection to Claim 6 in its entirety, arguing that her personal liability on Claim 6 was discharged in the Prior Case, and that the Court's order avoiding the lien of Creditor means that the claim should no longer be treated as secured.

### II.    APPLICABLE LAW

*A. Claim Objection*

Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects. Absent an objection, a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim under FED. R. BANKR. P. Rule 3001(f). *See Lundell v. Anchor Constr. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000). When a party files an objection to a proof of claim, that filing "creates a dispute which is a contested matter" within the meaning of FED. R.

BANKR. P. Rule 9014, and the Court must resolve the matter after notice and opportunity for hearing upon a motion for relief. *Id.*

When a creditor has filed a proof of claim that complies with the rules (thereby giving rise to the presumption of validity), the burden shifts to the objecting party who must "present evidence to overcome the *prima facie* case." *In re Medina*, 205 B.R. 216, 222 (B.A.P. 9th Cir. 1996). To defeat the claim, the objecting party must provide sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (*quoting In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). "[T]he objector must produce evidence, which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Donnan*, 2019 WL 1922843 at *3 (B.A.P. 9th Cir. 2019). If the objecting party produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re Consol. Pioneer Mort*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (*quoting Allegheny Int'l*, 954 F.2d at 173-74). "The ultimate burden of persuasion remains at all times on the claimant." *Lundell*, 223 F.3d at 1039.

  B.  *Summary of Analysis*

The avoidance of a consensual lien in a Chapter 13 case is effectuated by a two-step process. *See In re Boukatch*, 533 B.R. 292, 295 (B.A.P. 9th Cir. 2015) ("The lien strip procedure in a chapter 13 case is a two-step process."); *see also In re Nobelman*, 508 U.S. 324, 328-29 (1993) (court must first engage in the § 506(a) valuation process before determining the claim's status for purposes of § 1322(b)(2)). "Section 506(a), which is applied first, provides a valuation procedure and bifurcates creditors' claims into 'secured claims' and 'unsecured claims.'" *In re Boukatch*, 533 B.R. at 295-96; *see also In re Zimmer*, 313 F.3d 1220, 1223 (9th Cir. 2002) ("To put it more simply, a claim such as a mortgage is not a 'secured claim' to the extent that it exceeds the value of the property that secures it."). Then the Court applies 11 U.S.C. § 1322(b)(2). *See id.* at 296. If the § 506(a) valuation results in either (1) "secured claim[s], other than a claim secured only by a security interest in real property that is the debtor's principal residence"; or (2) an unsecured claim, then the plan may modify the rights of the creditor under § 1322(b)(2), avoiding the lien.

*See, e.g., id.* ("[I]f the claim is determined to be wholly unsecured, the rights of the creditor holding only an unsecured claim may be modified under § 1322(b)(2), and the creditor's lien may be avoided, notwithstanding the antimodification protection provided for in § 1322(b)(2).") (quotations omitted).

If the debtor's personal liability on the underlying debt has been discharged in a previous bankruptcy case, however, the issue is more complex. Because there is no longer *in personam* liability on the underlying debt, it could be argued that there is no unsecured claim after the § 506(a) valuation. But if the lienholder is not left with any unsecured claim, as shown in detail in the analysis section, *infra*, the debtor would be ineligible to use § 1322(b)(2) to avoid the lien or otherwise modify the rights of the creditor. Therefore, lien avoidance can only be statutorily permissible in this situation if the § 506(a) valuation is interpreted as resulting in an unsecured claim irrespective of any prior discharge for purposes of the Chapter 13 bankruptcy. As outlined below, this result is logically necessary, and the applicable statutes, the majority of caselaw, this district's forms, and policy considerations all weigh in favor of the result.

### III. ANALYSIS

*A. The Central District of California's Motion and Order*

The Court's form motion and order for avoiding liens both implicitly and explicitly recognize this dilemma for debtors. The lien avoidance motion filed by Debtor included, in the prayer for relief, the following request: "Respondent's claim on the junior position lien shall be allowed as a nonpriority general unsecured claim in the amount per the filed Proof of Claim." [Dkt. No. 22 at 3(d)(3)]. And, as noted in the introduction section, the Court's order granting the motion contains the following: "Unless otherwise ordered[1], any allowed claim in excess of this Secured Claim Amount is to be treated as a nonpriority unsecured claim and is to be paid pro rata with all

---

[1] The Court notes that this "[u]nless otherwise ordered" language was a recent addition to the district's form order, and its meaning is less than clear. While this qualifier may be helpful in the situation where the underlying claim is ultimately disallowed on unrelated grounds, when the proximate cause of the disallowance is the entry of the lien avoidance order, it seems inappropriate to then rely on that language to collaterally attack the order. The Court also notes that this form order is not one of the district's "mandatory" forms, and, therefore, Debtor was certainly free to modify the language.

4

other nonpriority unsecured claims in Class 5A of the Plan." [Dkt. No. 34, pg. 5].[2] Both the motion and order, now a final order, and one that was *submitted by the Debtor*, request and dictate, respectively, that Creditor's claim be treated as an unsecured claim. Furthermore, under principles of judicial estoppel, the instant claim objection should not be entertained.

In *New Hampshire v. Maine*, the Supreme Court outlined factors a court may applying when considering the appropriateness of judicial estoppel. 532 U.S. 742, 750-51 (2001). To wit:

> Courts have observed that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle. Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations. A third consideration is whether the party seeking to assert an inconsistent would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id*. Here, all three factors weigh in favor of the application of judicial estoppel. First, Debtor's position that Creditor does not hold an unsecured claim is clearly inconsistent with Debtor's earlier request that Creditor's claim be treated as unsecured. Second, Debtor prevailed on the lien avoidance motion, which was granted in its entirety. Third, Debtor would derive an unfair advantage because Creditor may have declined to oppose the lien avoidance motion under the assumption that its claim would be paid in full through Debtor's Chapter 13 plan. The later assertion that the lien avoidance order legally requires Creditor's claim to be disallowed in its entirety denies Creditor the ability to fully defend its claim. Therefore, Debtor is judicially estopped from claiming that there is no unsecured claim. Assuming, *arguendo*, that judicial estoppel does not apply, then, as shown below, the claim objection must fail as a matter of law.

---

[2] A response could be made that the language of the form motion and order is simply general language, not specific enough to address a Chapter 20 case. The response would be inaccurate because the order contains language that specifically addresses Chapter 20 cases. There is a split of authority nationally regarding whether lien stripping is ever permissible in "true" Chapter 20 cases where a debtor is ineligible for a discharge. *See generally In re Boukatch*, 533 B.R. 292, 296-300 (B.A.P. 9th Cir. 2015) (providing a detailed review of the different approaches). The bankruptcy court in *In re Okosisi*, 451 B.R. 90, 99-100 (Bankr. D. Nev. 2011) detailed a rationale to permit lien avoidance in Chapter 20 cases, developing the "fourth-option." The Central District of California's form motion and order specifically acknowledge the fourth option, only used in Chapter 20 cases, in the choice of the effective time of avoidance.

*B. History of Lien Avoidance*

The sole basis for Debtor's objection to Claim 6 is that Claim 6 was the subject of a prior discharge and lien avoidance order, and that, therefore, Creditor does not have an unsecured claim. To understand the legal argument made, a brief history of lien avoidance is necessary.[3]

Prior to 1992, lien avoidance was available to debtors in both Chapter 7 and 13 proceedings, and for junior liens that were both wholly underwater and partially underwater. *See e.g.*, *Gaglia v. First Fed. Sav. & Loan Ass'n*, 889 F.2d 1304 (3rd Cir. 1989) (Chapter 7 debtors could strip down partially underwater junior lien). In 1992, however, the Supreme Court decided *Dewsnup v. Timm*, 502 U.S. 410 (1992), which held that Chapter 7 debtors could not strip down a partially unsecured lien to the value of the collateral. In reaching that conclusion, the Supreme Court noted the definition of secured claim in 11 U.S.C. § 506(a)(1), which is the following:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The Supreme Court also noted the language of 11 U.S.C. § 506(d), which states, in relevant part: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." Prior to *Dewsnup*, some courts interpreted § 506(a)(1) and § 506(d), when read in conjunction, to establish a method by which debtors could avoid a lien to the extent such a lien was wholly or partially unsecured. *See, e.g.*, *Gaglia*, 889 F.2d at 1306-11. The Supreme Court, however, rejected that reading, deferring to the "pre-Code rule that liens pass through

---

[3] For an extensive review of the history of lien avoidance and discussion of current issues arising in the context of "Chapter 20" filings see *Jessica Johns*, *Lien Stripping in Chapter 20 Bankruptcy: A Permissible Relief to Debtors*, 32 EMORY BANKR. DEV. J. 471 (2016).

bankruptcy unaffected." *Dewsnup*, 502 U.S. at 417. In rejecting such a reading, the Supreme Court appeared to foreclose the possibility of using § 506 as an independent mechanism to avoid wholly or partially underwater liens. *See, e.g.*, *In re Talbert*, 344 F.3d 555, 557-58 (6th Cir. 2003). Nevertheless, the Eleventh Circuit continued to allow Chapter 7 debtors to strip off wholly underwater liens, noting that the Supreme Court in *Dewsnup* had decided on the facts of a partially underwater lien. *See, e.g.*, *In re McNeal*, 735 F.3d 1263, 1265 (11th Cir. 2012).

In 2015, however, the Supreme Court returned to the issue, and rejected the Eleventh Circuit's approach, holding that Chapter 7 debtors could not avoid wholly underwater liens through the operation of § 506. *See Bank of Am., N.A. v. Caulkett*, 135 S. Ct. 1995, 1999 (2015) ("[Section] 506(d)'s function is reduced to voiding a lien whenever a claim secured by the lien itself has not been allowed.") (quotation omitted). While it is not exactly clear how § 506 could be applied differently depending on whether the lien is wholly or partially unsecured, the Supreme Court concisely reasserted that "*Dewsnup* defined the term 'secured claim' in § 506(d) to mean a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim. . . . *Dewsnup*'s construction of 'secured claim' resolves the question presented here." *Id*.

Nevertheless, Chapter 13 debtors have a different mechanism by which they can avoid liens that are wholly underwater: 11 U.S.C. § 1322(b)(2), which provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may –
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

Prior to 1993, several courts, including the Ninth Circuit, had allowed Chapter 13 debtors to use § 1322(b)(2) to avoid both wholly and partially underwater liens. *See, e.g.*, *In re Hougland*, 886, F.2d 1182 (9th Cir. 1989). In 1993, however, the Supreme Court decided *Nobelman v. Am. Savs. Bank*, 508 U.S. 324 (1993), which limited Chapter 13 debtors' ability to use § 1322(b)(2) to avoid liens to those circumstances where the junior lien was wholly underwater. *Nobelman*, 508

7

U.S. at 332 ("In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence."). After *Nobelman* (and *Dewsnup*), most courts held that Chapter 13 debtors were still permitted to use § 1322(b)(2) to avoid liens which were "secured" by their principal residence if such lien was wholly underwater (and thus, after a § 506(a)(1) valuation, not statutorily "secured"). *See, e.g.*, *In re Zimmer*, 313 F.3d 1220, 1227 (9th Cir. 2002) ("In order to give effect to the definitions of secured and unsecured claims under § 506(a), we must conclude that the rights of a creditor holding only an unsecured claim may be modified under § 1322(b)(2)."); *see also* 4 COLLIER'S ON BANKRUPTCY ¶ 506.06[1][c] (16th ed. 2018) ("The great majority of post-*Dewsnup* decisions on the issue of 'lien stripping' have limited the *Dewsnup* holding to the chapter 7 context and have allowed the practice in cases under chapters 11, 12 and 13.") (collecting cases). As noted by a leading bankruptcy treatise, and as outlined above, this result follows because a wholly underwater lien is not "secured" pursuant to § 506(a), and is, therefore, subject to modification under § 1322(b)(2). *See In re Boukatch*, 533 B.R. 292, 296 (B.A.P. 9th Cir. 2015) ("[I]f the claim is determined to be wholly unsecured, the rights of the creditor holding only an unsecured claim may be modified under § 1322(b)(2), and the creditor's lien may be avoided, notwithstanding the antimodification protection provided for in § 1322(b)(2)) (quotations omitted); *see also* 4 COLLIER'S ON BANKRUPTCY § 506.06[1][c] ("In general, the decisions that hold that lien stripping is available in the chapter 11, 12 and 13 context are of two types. One group finds that lien stripping is available as provided in various Code provisions other than section 506(d). The second group finds that lien stripping is authorized by section 506(d) itself. The first group is correct; the second is not.") (footnotes omitted).

    *C. Lien Avoidance in Chapter 20 Cases*

An additional wrinkle, however, is present when a debtor files a "Chapter 20" case. A Chapter 20 case involves a debtor who received a discharge in a Chapter 7 case and subsequently files a Chapter 13 case. In that circumstance:

> The Chapter 7 discharge erases all dischargeable, unsecured debts. The discharge, however, only prevents creditors from collecting against the debtors personally. Any liens on secured property ride through the bankruptcy. The liens become non-recourse loans. When the debtor then files under Chapter 13 none of the unsecured debt is part of the Chapter 13 case because it has been discharged in the Chapter 7 case, but the remaining liens are claims in the Chapter 13.

*In re Winitzky*, 2009 WL 9139891 at *1 (Bankr. C.D. Cal. 2009) (citations omitted). There are at least two significant questions that arise when a Chapter 13 debtor attempts to avoid a wholly underwater junior lien after obtaining a Chapter 7 discharge: (1) whether avoidance of the junior lien is permissible[4] and (2) how the avoided lien should be treated during the pendency of the Chapter 13 plan.

The two preliminary questions identified above are legally complex – although a brief description is adequate to reveal the issues. Under the *Nobelman* lien avoidance procedure, illustrated by *In re Boukatch*, 533 B.R. 292, 295-96 (B.A.P. 9th Cir. 2015) and *In re Zimmer*, 313 F.3d 1220, 1226-27 (9th Cir. 2002), a debtor first seeks a valuation under 11 U.S.C. § 506(a)(1). Pursuant to § 506(a)(1), the claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property," and is an "unsecured claim to the extent that the value of such creditor's interest or the amount so subject setoff is less than the amount of such allowed claim."

Here, because Creditor's entire claim is underwater (i.e., the value of the collateral is less than the amount of the senior lien), the application of § 506(a)(1) leads to a conclusion that the amount of Creditor's secured claim is zero. Pursuant to § 506(a)(1), the entirety of the claim is

---

[4] This issue has been resolved in the affirmative by the Ninth Circuit in *In re Blendheim*, 803 F.3d 477 (9th Cir. 2015).

9

then deemed to be unsecured, but Debtor would argue that there is no resulting unsecured claim because it was discharged. *See In re Zimmer*, 313 F.3d at 1223 ("Under the Bankruptcy Code, 'secured claim' is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim."). But is that correct? Does the outcome of § 506(a)(1) – that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . *is an unsecured claim* to the extent that the value of such creditor's interest is . . . less than the amount of such allowed claim" (emphasis added) – depend on the existence of *in personam* liability?

If the language of § 506(a)(1) *does not* implicitly depend upon whether *in personam* liability exists, then the plain language of the statute provides that any part of the claim determined not to be secured is automatically unsecured (i.e. gives rise to an unsecured claim). In other words, it would be irrelevant to a § 506(a)(1) analysis whether *in personam* liability was previously discharged. In effect, a Chapter 20 debtor would then have a choice regarding wholly underwater junior liens: treat the claim as either: (a) wholly secured (with the lien passing through bankruptcy unaffected) or (b) wholly unsecured (avoiding the lien but treating the claim as a general unsecured debt under a plan).

If § 506(a)(1) *does* implicitly contain an assumption that, for an unsecured claim to remain, *in personam* liability must have existed on the claim in the first place, a different problem arises. As noted above, 11 U.S.C. 1322(b)(2) allows Chapter 13 debtors to "modify the rights of holders of secured claims, other than a claim secured only by a secured interest in real property that is the debtor's principal residence, or of holders of unsecured claims." And *Nobelman* requires a two-step, sequential process for lien avoidance of wholly underwater junior liens by Chapter 13 debtors: (1) the application of § 506(a)(1); and (2) the modification of the resulting unsecured claim through operation of § 1322(b)(2). *See, e.g.*, *In re Zimmer*, 313 F.3d 1220, 1226-27 (9th Cir. 2002); *In re Boukatch*, 533 B.R. 292, 295-96 (B.A.P. 9th Cir. 2015). In order for § 1322(b)(2) to be applicable, however, and thus lien avoidance possible, the § 506(a)(1) valuation must result in a claim that fits within the language of § 1322(b)(2). In other words, for § 1322(b)(2) to be applicable, a claim after a § 506(a)(1) valuation must be either (1) a secured claim, other than a claim secured by real property that is the debtor's principal residence; or (2)

10

an unsecured claim. Clearly, if Claim 6 is secured, it is only secured by Debtor's principal residence. Therefore, the only way § 1322(b)(2) is available is if a § 506(a)(1) valuation results in an unsecured claim. Finally, because the Ninth Circuit in *In re Blendheim*, 803 F.3d 477 (9th Cir. 2015) has held that lien stripping is available to Chapter 20 debtors under § 1322, the § 506(a)(1) valuation must, therefore, essentially create, resurrect, or otherwise result in a claim which is considered an "unsecured claim" for the purposes of the instant bankruptcy case -- this result is logically unambiguous and simply unavoidable. This process, and the conclusion that Creditor holds an unsecured claim that must be treated in the Chapter 13 plan, have been detailed comprehensively by the Bankruptcy Appellate Panel in *In re Boukatch*, 533 B.R. 292 (B.A.P. 9th Cir. 2015), which outlined the appropriate legal approach and repeatedly referred to the creditor's claim as "unsecured." 533 B.R. 292, 300 ("Consequently, *Nobleman* and *Zimmer* dictate that MidFirst's claim is "unsecured" under § 506(a). Therefore, MidFirst holds only an "unsecured claim" for purposes of § 1322(b)(2); the claim is not subject to its antimodification protections.").

*D. Caselaw on the Treatment of Avoided Lien in a Chapter 20 Case*

The caselaw on this narrow issue (i.e. when lien stripping is sought in a Chapter 20, how should the claim be treated under the plan) is not extensive. Multiple bankruptcy courts in California, however, have recognized the consequences noted above, and, nationally, the first opinion to address the issue appears to have come from this district. *See In re Akram*, 259 B.R. 371, 377 (Bankr. C.D. Cal. 2001) ("However, neither *Lam* nor the cases from other Circuits addressed or allowed the result moved for here: that a *Lam*-stripped claim should be valued, for chapter 13 plan purposes, not only as a secured claim of zero, but also as a general unsecured claim of zero, where the debtor previously received a chapter 7 discharge. In fact, neither movant, nor this Court, found any reported case authorizing the result here moved for, or even ruling on this 'Chapter 20' twist to *Lam* motions."). The holding of *Akram* is as follows: "the '*Lam*-stripping'" of these secured claims in the chapter 13 case resulted in valuing the secured claims at zero secured, for chapter 13 plan purposes, and turned the full amount owed to each creditor (pursuant to that creditor's Note) into a general unsecured claim, for chapter 13 plan purposes." *Id*. at 378.

11

*Akram* is the majority position on the issue. *See In re Eaton*, 2006 WL 6810924 at *6 (B.A.P. 9th Cir. 2006) ("Appellant's status as an unsecured creditor would therefore be governed by the terms of Appellees' plan."); *In re Fling*, 2015 WL 5168379 at *4 (Bankr. D. Colo. 2015); *In re Renz*, 476 B.R. 382, 389 (Bankr. E.D. N.Y. 2012) ("Debtors' argument that, by discharging their personal liability in their prior Chapter 7 case and by stripping off Chase's lien in the Adversary, they have somehow disallowed and reduced the Chase Claim from $100,516.80 to $0, is unsupported by any relevant legal authority and is simply unpersuasive."); *In re Frazier*, 448 B.R. 803 (Bankr. E.D. Cal. 2011) (finding that *In re Zimmer* requires the claim to be treated as unsecured); *In re Hill*, 440 B.R. 176, 183 (Bankr. S.D. Cal. 2010) ("Controlling Ninth Circuit precedent treats CIT's claim as an unsecured claim in this Chapter 13 case under § 1322."); *In re Haque*, 331 B.R. 524, 527 (Bankr. D. Mass. 2005) ("The Debtor cannot object to the unsecured claim of a nonrecourse creditor because that is the price of separating the claim from its security pursuant to section 506(a).") (quotation omitted); *In re Gounder*, 266 B.R. 879, 880 (Bankr. E.D. Cal. 2001) ("Given that the lien survived the chapter 7 discharge, if a chapter 13 petition is later filed and the lien is stripped pursuant to *Lam*, the creditor must be allowed an unsecured claim despite the earlier chapter 7 discharge."). Even *Okosisi*, the decision commonly referred to as detailing the "fourth option," which provided a rationale to validate lien stripping in Chapter 20 cases (see footnote 4), assumed that the claim would be treated as an unsecured claim in the plan. 451 B.R. 90, 96 (Bankr. D. Nev. 2011) ("Even though the chapter 13 debtor faces no personal liability on the debt, the debtor may use Section 506(a) to determine that the claim is not supported by the value of any collateral, avoid the lien through the chapter 13 plan, and thereby treat the debt as unsecured debt.").

Importantly, the Bankruptcy Appellate Panel has, on two occasions, addressed lien avoidance in the Chapter 20 context. While neither case involved a subsequent claim objection seeking to disallow the claim, both cases strongly implied, or explicitly stated, that the creditor would retain an unsecured claim.

First, in *In re Eaton*, 2006 WL 6810924 (B.A.P. 9th Cir. 2006), the Bankruptcy Appellate Panel explicitly concluded that a secured creditor, whose recourse against the debtor has been

extinguished by a Chapter 7 discharge, is still left with an unsecured debt after lien avoidance. To wit:

> If Appellant's liens were avoided, Appellant would presumably be left with unsecured claims. However, it is clear that Appellees do not intend to pay Appellant, despite the confirmed plan's provision that 100% of unsecured creditors' claims would be paid. This constitutes yet another feature of the confirmed plan which Appellees seek to modify by way of their motions, and another manner in which Appellees' rights would be affected by that modification.
>
> We disagree with the bankruptcy court's conclusion that Appellant's potential unsecured claim had already been discharged in Appellees' chapter 7 case. This reasoning contravenes § 506(a) and the reach of Appellees' chapter 7 discharge. Because the record contains nothing to indicate otherwise, presumably Appellant's predecessors' claims, as secured claims, emerged unscathed by the chapter 7 discharge, which only impacted creditors' *in personam* rights against Appellees. Appellant's predecessors held secured, not unsecured, claims in the chapter 7 case. It is only through their chapter 13 filing that Appellees could conceivably use § 506(a) to strip the deeds of trust on their residence securing Appellant's claims. And if the lien is stripped, the would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor.

*Id.* at *6 (quotations and citations omitted).

Second, the Bankruptcy Appellate Panel in *In re Boukatch*, 533 B.R. 292 (B.A.P. 9th Cir. 2015), while analyzing whether lien avoidance was permissible in a Chapter 20 case, repeatedly referred to the creditor's claim as " 'unsecured' " for purposes of the Chapter 13 plan. For example, the Bankruptcy Appellate Panel wrote:

> No one disputes that under § 506(a) MidFirst's lien has no value because the senior lien held by Wells Fargo exceeds the value of the property by approximately $40,000. Consequently, *Nobelman* and *Zimmer* dictate that MidFirst's claim is "unsecured" under § 506(a). Therefore, MidFirst holds only as "unsecured claim" for purposes of § 1322(b)(2); the claim is not subject to its antimodification protections.

*Id.* at 300 (citations omitted).

Also of note is that, excluding citations and quotations, the Bankruptcy Appellate Panel used the phrase "unsecured lien" or "unsecured junior lien" sixteen times in the course of its decision. *Id*. This is important because, due to the operation of 11 U.S.C. § 506(a), the terms "secured" and "unsecured" do not have the same meaning in the context of bankruptcy as they have outside of bankruptcy. *See, e.g.*, *In re Zimmer*, 313 F.3d 1220, 1223 (9th Cir. 2002) ("Under the

13

Bankruptcy Code, 'secured claim' is thus a term of art; not every claim that is secured by a lien on property will be considered a 'secured claim.' Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house."). As outlined in the section below, the term "unsecured," in the context of bankruptcy essentially means "not secured by value"; the term does not imply that there must be is *in personam* liability on the underlying claim.

### E.  Secured and Unsecured Claim in Bankruptcy

As noted by the Ninth Circuit, the term "secured" is a term of art in bankruptcy. *See In re Zimmer*, 313 F.3d 1220, 1223 (9th Cir. 2002). The Bankruptcy Code defines lien in a typical manner: "[t]he term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). But pursuant to 11 U.S.C. § 506(a), and the authorities cited above, the fact that a creditor has a lien does not necessarily mean that the creditor has a secured claim. When there is no value for the lien to attach to, the Bankruptcy Code deems the claim to not be a secured claim, but rather an unsecured claim. *See* 11 U.S.C. § 506(a)(1).

The Bankruptcy Code further defines "claim" broadly. *See* 11 U.S.C. § 101(5)(A) ("The term "claim" means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."). A claim does not require *in personam* liability. *See* 11 U.S.C. § 102(2) ("'claim against the debtor' includes claim against property of the debtor"); *see also* 11 U.S.C. § 502(b)(1) ("[T]he court . . . shall allow such claim in such amount, except to the extent that such claim is unenforceable against the debtor *and* property of the debtor.") (emphasis added). Finally, in this case, Creditor's lien is not avoided yet – the lien avoidance order provides for retention of lien until avoidance, and the effective date of avoidance is no earlier than completion of the Chapter 13 plan. [Dkt. No. 34]. Therefore, Creditor holds a claim, and such claim is enforceable against property of the debtor.

But despite the language of § 506(a)(1) (providing that the claim "is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim), and despite the fact that it is not clear how Creditor could hold a claim which, as Debtor implies, is neither "secured" nor "unsecured," Debtor asserts that there can be no unsecured debt because her *in personam* liability has been discharged. This argument is a red herring.

Quite simply, outside of bankruptcy, an asserted claim which is not secured and for which there is no *in personam* liability does not appear to be a valid claim. In bankruptcy, however, the concepts of "secured" and "unsecured" claims are more malleable. The existence of a lien in bankruptcy, while constituting a "claim," does not necessarily mean the lienholder has a "secured" claim.  Because the term "secured claim" is a term of art, not necessarily synonymous with the term "lien," and because a claim which is not secured can be deemed unsecured under the Bankruptcy Code, the holder of a lien can be left with only an unsecured claim. *See, e.g.*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining unsecured claim as (1) "A claim by a creditor who does not have a lien or a right of setoff against the debtor's property"; *or* (2) "A claim by a creditor to the extent that its lien on or right of setoff against the debtor's property is worth less than the amount of the debt."). Neither the Bankruptcy Code nor the general definition of "unsecured claim" contains anything requiring *in personam* liability. The assumption that *in personam* liability is required for the existence of an unsecured claim simply arises from the inappropriate application of the non-bankruptcy framework for "secured" and "unsecured."[5]

  F.  *Policy Considerations*

Not only do logical reasoning, caselaw, and this district's practice demand the result, but the equities concur. A Chapter 13 debtor can propose plans which pay creditors three different categories of dividends: (1) 0%; (2) more than 0%, but less than 100%; or (3) 100%. In either of the first two categories, the amount the debtor pays into the plan will not change if the debtor avoids a wholly underwater lien. In other words, only in those cases where the Chapter 13 debtor

---

[5] Starting from the premise that a lien is a claim, the Bankruptcy Appellate Panel's repeated reference to an "unsecured lien" makes little sense if one takes the position that *in personam* liability is required for an unsecured claim to exist. *See generally In re Boukatch*, 533 B.R. 292 (B.A.P. 9th Cir. 2015). A lien, itself, both in the common definition and in the Bankruptcy Code's definition in 11 U.S.C. § 101(37), is only a claim against property. If "unsecured" requires *in personam* liability, then an "unsecured lien" is a paradox.

15

has the ability to pay at least some of the resulting unsecured claim would the result impact the Chapter 13 plan. And in those cases, it would be inequitable for the debtor to not make payments on the claim of the junior lienholder when the debtor has the ability to do so. Furthermore, there is no mechanism under the bankruptcy code that would allow a Chapter 13 debtor to avoid a lien and discharge the *in personam* liability without the obligation to make a good faith effort to make some payment on the claim. For all the reasons outlined above, Debtor's efforts at finding a loophole to avoid the requirement are logically incompatible with the Code.

G. *In re Free*

Finally, the Court will briefly address Debtor's argument that *In re Free*, 542 B.R. 492 (B.A.P. 9th Cir. 2015), should guide this Court's analysis. Debtor argues that:

> Since the debt is not to be counted toward the debt limit for eligibility, likewise it should not be counted in the total debt administered and paid through Debtor's Chapter 13 case. Debts that are administered by the Trustee in the Chapter 13 Plan count for the debt limit eligibility under § 109(e), the debt of Claimant should not fall within this category and should not be paid by the Trustee in Debtor's case.

[Dkt. No. 46, pgs. 2-3]. The Court rejects Debtor's argument for several reasons.

First, even assuming, *arguendo*, that Bankruptcy Appellate Panel decisions are binding precedent in bankruptcy courts, the issue decided in *In re Free* was an issue of eligibility under 11 U.S.C. § 109(e). Therefore, the holding of *In re Free* does not resolve this matter.

Next, turning to the analysis in *In re Free*, the Court finds it to be wholly unpersuasive, primarily because that opinion does not address the critical issues presented in this opinion nor did it thoroughly address the caselaw relevant to the issues here. First, and most importantly, the Bankruptcy Appellate Panel in *In re Free* did not explain how lien avoidance can be logically possible in a Chapter 20 case without a resulting unsecured claim. *See, e.g.*, 4 COLLIER'S ON BANKRUPTCY § 506.06[1][c] ("In general, the decisions that hold that lien stripping is available in the chapter 11, 12 and 13 context are of two types. One group find that lien stripping is available as provided in various Code provisions other than section 506(d). The second group finds that lien stripping is authorized by section 506(d) itself. The first group is correct; the

16

second is not.") (footnotes omitted). Second, the Bankruptcy Appellate Panel did not address its previous cases of *In re Eaton*, 2006 WL 6810924 (B.A.P. 9th Cir. 2006) and *In re Boukatch*, 533 B.R. 292 (B.A.P. 9th Cir. 2015), nor did it directly address the fact that the case it approvingly cited, *In re Rosa*, 521 B.R. 337 (Bankr. N.D. Cal. 2014), adopted the minority position, disagreeing with the conclusions reached in "admittedly abundant case law." 533 B.R. at 340. Third, the Court believes that *In re Free* applied definitions of "secured" and "unsecured" which are incompatible with the plain language of 11 U.S.C. § 506(a), as more fully discussed in section III.E, *supra*.

### IV.    CONCLUSION

Ultimately, the plain language of 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2), relevant caselaw, and this district's form motion and order recognize the logical necessity that only one of two things can be true: (1) lien stripping is unavailable in Chapter 20 cases; or (2) the wholly underwater junior lien becomes an unsecured claim upon lien avoidance. Legally, *In re Blendheim*, 803 F.3d 477 (9th Cir. 2015), made the former option impermissible in the Ninth Circuit; therefore, the latter option is required. Quite simply, the Chapter 20 debtor cannot have its cake and eat it too. Creditor's claim, originally secured by property of Debtor, is deemed an unsecured claim after lien avoidance.

Based on the foregoing, the objection to Claim 6 is OVERRULED. IT IS SO ORDERED.

### 

Date: June 19, 2019

Mark Houle
United States Bankruptcy Judge